UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

MEMORANDUM

| Case No. | EDCV 17-1874 DSF (SPx) | Date | 10/17/17 |
|---|---|---|---|
| Title | Andres Cortes v. Jorge Orozco, et al. | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge |
|---|---|

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs | Attorneys Present for Defendants |
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order GRANTING PCB's Motion to Dismiss (Dkt. 17), and GRANTING in PART and DENYING in PART Cortes's and Sandoval's Motions to Dismiss and Strike Scandalous Matter (Dkts. 24, 25)

## I.   INTRODUCTION

Plaintiff and cross-defendant Andres Cortes brings this action against Jorge Orozco, Miguel Soltero, Skyline Construction Services, Inc., Skyline Equities, LLC, Pacific Enterprise Bank, Pacific Commerce Bank (PCB), Old Republic Title Company, U.S. Small Business Administration, So Cal CDC, Robert Rabalais, Deborah H. Ackerman, J.P. Morgan Chase Bank, NA, California Resources Corporation, California Resources Elk Hills, LLC, Chicago Title Company, First American Title Company, Commonwealth Land Title Company, Pacific Premier Bank, Pacific Coast Title Company, Pacific Escrow Service, Inc., Civic Financial Services LLC, Wilshire Finance Partners Incorporated, WFP Income Fund, LLC, Transamerica Financial Services Corporation, and FCI Lender Services.  Cortes seeks, among other things, to quiet title to certain properties, enjoin various allegedly unauthorized and fraudulent actions related to the properties, and secure redress for breaches of fiduciary duties.  Defendant PCB moves to dismiss for failure to state a claim against it.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

In its cross-complaint, Skyline Construction asserts RICO and fraud claims against Cortes, Adolfo Sandoval, Auto Activo SA DE CV, Apollo Wood Recovery, Inc., and Shawn Nutter, alleging Cortes and his affiliates sought to use Skyline Construction as a vehicle to launder money into the United States. Cortes and Cross-defendant Sandoval each move to dismiss Skyline Construction's cross-complaint and strike allegedly scandalous matter.

The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. The hearing set for October 23, 2017 is removed from the Court's calendar. For the reasons stated below, PCB's Motion to Dismiss is GRANTED, Cortes's and Sandoval's Motions to Dismiss are GRANTED in PART and DENIED in PART; and Cortes's and Sandoval's Motions to Strike are DENIED.

## II.   FACTUAL ALLEGATIONS

### A. Cortes's First Amended Complaint (Dkts. 1-1 to 1-4)

Cortes was introduced to Jorge Orozco through Orozco's brother, who was Cortes's long-time accountant and family friend. First Am. Compl. (FAC) ¶ 32. Based on Orozco's qualifications and trust stemming from the relationship with Orozco's brother, Cortes hired Orozco to handle the accounting for Cortes's various business operations in Mexico. Id. ¶ 34. In 2009, Cortes sought to expand his business investments to the United States with the assistance of Miguel Soltero, who is a part owner of two companies, Maya Properties and Goldberg Properties. Id. ¶¶ 36, 38.

   1. Cortes, with the Assistance of Orozco and Soltero,
      Purchases the California Properties

Soltero and Maya Properties agreed to find for Cortes, and, subject to Cortes's approval, purchase residential properties in California, for which Cortes would pay Soltero and Maya Properties a fee in the range of $5,000 to $10,000. Id. at 37. According to the FAC, the purchased properties were to be held in the name of Maya Properties or Goldberg Properties, "as a placeholder for Cortes." Id. Soltero created for Cortes an investment entity, Cortez Equities, LLC, which, Cortes asserts, was to be the transferee and/or purchaser of the properties Soltero identified and Cortes approved for purchase. Id. ¶ 39.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

Soltero told Cortes at some point that certain purchased properties could not be transferred to Cortez Equities because there were liens against the properties, but later informed him that Soltero and Orozco had worked together to remove the liens and transfer the properties. Id. ¶ 40. Then, in late 2015, Orozco advised Cortes that there was to be a change in Mexican tax laws that would impose a burden on owners of properties in the United States. Id. ¶ 41. Orozco advised Cortes that he could avoid that tax burden by transferring the assets—approximately 41 properties (collectively, the California Properties)— held in Cortez Equities to Skyline Equities, a limited liability company that Orozco created for Cortes. Id. 41, 42. Cortes alleges that Orozco represented—and Cortes believed—that Skyline Equities and Orozco would hold the properties "in trust for the benefit of Cortes as the true owner and beneficiary." Id. ¶ 42.

Cortes alleges that in March 2017 he learned that Cortez Equities, LLC, which he believed to have been created for Cortes to hold the California Properties, is listed as a "dba of Skyline Equities, LLC and that Orozco now improperly claims a 100% ownership interest in Skyline Equities." Id. ¶¶ 67-68. Cortes also learned that Orozco and Goldberg Properties, through Soltero, claim to be the record title holders and true owners of the California Properties. Id. ¶ 68. Cortes alleges Orozco made misrepresentations about changes in Mexican tax law in order to steal the properties from him. Id. ¶ 69.

  2. Cortes Invests in SCOR

Orozco presented Cortes with the opportunity to invest in a recycling company, the predecessor to which was owned and operated by Sandoval and Cesar Rios, with Orozco handling the bookkeeping. Id. ¶ 45. Following the death of Rios's father, Sandoval and Rios needed funds to "launch a new company" that would benefit from the existing company's connections and customers, as well as Sandoval's and Rios's expertise. Id. ¶ 46. Orozco advised Cortes to make a large investment quickly so that there would be no interruption in operations. Orozco represented that the investment would be lucrative. Id.

Orozco told Cortes it was necessary to have a California general contractor's license in order to operate a recycling business in the state. Id. ¶ 47. Orozco, the CEO of construction company Skyline Construction, had such a license. Id. Orozco and Cortes agreed the recycling business would be part of Skyline Construction, but would operate entirely separately from the construction side of the business. Id. Thereafter, Orozco

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

told Cortes that he would need to invest $1 million and would be a 98% owner of the recycling business. Id. ¶ 48.

The recycling business launched in 2013, as "a dba of Skyline Construction" named SCOR (comprised of the first initials of the parties involved in its creation: Sandoval, Cortes, Orozco, and Rios). Id. ¶ 49. The parties agreed (1) Cortes would receive a 98% ownership interest in SCOR but would have no active management duties; (2) Orozco and Sandoval would each receive 1% ownership in SCOR; (3) Orozco would handle the bookkeeping, Cortes's investment, and the "re-investment of all funds back into SCOR," for which he would be compensated by a salary and a bonus tied to revenue; and (4) Sandoval would be compensated with a salary and a bonus tied to revenue. Id. ¶ 50. Pursuant to the agreement, Orozco paid himself and Sandoval a monthly salary. Id. ¶ 51. Cortes alleges he reasonably believed that he had acquired 98% ownership of SCOR. Id.

Around the time of SCOR's launch, Orozco proposed using Cortes's 41 properties as collateral to fund the recycling venture. Id. ¶ 52. Relying on Orozco's expertise and their past dealings, Cortes sold several of those properties for cash to invest in SCOR and agreed to have the remaining approximately three dozen properties "held in Skyline Equities for the benefit of Cortes and SCOR." Id. Cortes also executed powers of attorney in Orozco's name, appointing Orozco as Cortes's agent with respect to investing the $1 million capital contribution and for the management of the properties held in Skyline Equities for the benefit of Cortes and SCOR. Id.

Cortes claims to have provided around $3.5 million over the years to Orozco for the use of SCOR, and around $6.5 million to Skyline Equities for the use of SCOR and/or Cortes. Id. ¶ 54. Cortes also contributed funds as needed to pay SCOR's obligations and meet its purchasing needs. Id. Cortes believed his financial contributions were growing the value of SCOR. Id. ¶ 56.

Cortes alleges Orozco, rather than manage Cortes's properties for the benefit of SCOR, instead drove SCOR into debt for the benefit of Skyline Construction. Id. ¶ 66. Cortes states that he recently learned that according to records obtained from California, Orozco and Soltero are listed as owning 10% of the voting stock in "Skyline Construction Services Inc. dba SCOR Industries" – despite Cortes's belief and Orozco's representations that Cortes was the 98% owner of SCOR. Id. Cortes describes a late 2016 or early 2017 limited review of his financial records held by Orozco, during which Cortes learned that SCOR is saddled with approximately $3 million in debt. Id. ¶ 71.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Cortes also recently learned (1) Skyline Construction is a subchapter-S corporation so that all its profits and losses pass through Orozco; (2) Skyline Construction's finances have been commingled with SCOR so that SCOR's profits and losses also pass through Orozco; (3) the cash infusions Cortes has made over the years at Orozco's request have not been used to cover SCOR's monthly expenses and instead have funded Skyline Construction; (4) Orozco has directed unauthorized salaries and business charges; (5) SCOR's counsel improperly represented both SCOR and Orozco personally in his attempt to oust Cortes and steal the California properties; (6) Cortes has been denied meaningful access to SCOR's corporate books and records; and (7) Orozco's brother-in-law improperly placed money in Skyline Construction's account and then borrowed against it, the promissory notes for which were executed "in favor of Cortes and/or [Orozco's brother-in-law]," and, that after informing Cortes of the funds, Orozco closed the associated Bank of America business accounts. Id. ¶¶ 72-82.

In April 2017, Cortes asserts that Orozco and Skyline Construction attempted to oust Cortes, by stating that Cortes has no equity or ownership interest in SCOR, no equity in or legal title to the California properties, and is "nothing but a trespasser" in SCOR's offices. Id. ¶ 83.

### 3. Cortes Purchases The Retreat and The Sycamore Creek Properties

Orozco approached Cortes with investment opportunities in two properties, referred to in the FAC as The Retreat and The Sycamore Creek. Id. ¶¶ 57-59. Both properties were, according to Cortes, to be held by Skyline Equities but owned by Cortes, and in the event of sale, Cortes would take 60% and Orozco 40% of net capital gains. Id. ¶¶ 58, 61. Cortes asserts that Orozco took out two loans, one in the amount of $1.1 million and a second, unauthorized loan, the Harmony Loan, in the amount of $2.7 million, purportedly to pay off the first loan and use the remaining funds to invest in The Sycamore Creek. Id. ¶ 60. The Harmony Loan never was used to pay for The Sycamore Creek, and the property is currently held in escrow. Id. ¶¶ 60-61.

Cortes recently learned, contrary to Orozco's representations at the time of purchase, that Orozco placed The Retreat in his name alone instead of in the name of Skyline Equities, id. ¶ 84, and Orozco similarly has tried to gain sole control of The Sycamore Creek Properties. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

### 4. Cortes Invests in the Mexican Plants

Cortes also invested approximately $600,000 in a recycling plant in Los Cabos, Mexico, and approximately $400,000 in a recycling plant in Tijuana, Mexico, both of which are run by Orozco and perform operations similar to those SCOR performs in California (collectively, the Mexico Plants). Id. ¶¶ 62-64. Cortes alleges Orozco has denied Cortes access to the Mexico Plants' books and records. Id. ¶¶ 87-88.

## B. Skyline Construction's Cross-complaint (Dkt. 59-1)

Skyline Construction's cross-complaint alleges Cortes and his associates attempted to use Skyline Construction as a vehicle to launder unlawfully acquired money into the United States. Cross-compl. ¶ 1. Skyline Construction further alleges Cortes's payments to Skyline were unsecured and undocumented loans for the express purpose of hiding the illicit nature of the funds, id. ¶ 2, and Cortes and his co-conspirators stole SCOR's revenues to operate a "shadow business" and "were successful in robbing the company blind." Id. ¶ 4. Skyline Construction asserts violations of 18 U.S.C. § 1962, fraud, conversion, interference with contractual relations, and UCL violations.

### 1. Cortes Had no Ownership in SCOR and Instead was an Unsecured Lender

Skyline Construction asserts that in August 2012, Orozco and Cortes discussed the possibility of getting involved in a recycling venture in California. Id. ¶ 23. The parties thought about the name of the company (SCOR Industries Corp.) and what roles the parties might play, but ultimately, Cortes's involvement "was made dependent on his ability to fund all operations of the new corporation." Id. Cortes was unable to provide those funds, and instead provided only some loans. Id. Because Cortes did not or could not fully fund the operation, SCOR Industries Corp. was never formed. Id.

Instead, Orozco created a new division within Skyline Construction, using the "dba" of SCOR. Id. ¶ 26. Customers pay SCOR to remove construction debris which SCOR then separates and sells to various recyclers. Id. ¶¶ 28-30. Recycling vendors generally pay in cash, which makes accounting for the transactions difficult. Id. ¶ 30. Sandoval, as manager of SCOR's operations, had control over SCOR's trucks, drivers, and employees, including his assistant, who, after being fired in late 2017, was discovered to have failed to enter into the computer numerous construction debris weight tickets. Id. ¶¶ 32-33.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

    2.  Cortes's RICO Enterprise

Skyline Construction asserts that in 2011, Cortes purportedly sought to expand his luxury auto dealership in Mexico, Auto Activo, into the United States. Id. ¶¶ 36-37. Cortes "fraudulently used U.S. immigration laws" when he applied for visas for himself and his family, falsely claiming that Cortes was being transferred to the United States to operate Auto Activo's new subsidiary, Roccar. Id. ¶ 38. According to the cross-complaint, Roccar in fact was a "sham corporation and a 'front'" set up to evade immigration laws and launder money from Mexico to the United States. Id. ¶ 39. In one year, Roccar purchased only four cars, and Cortes instead focused on his real estate investments. Id. ¶¶ 40-41.

As evidence of Cortes's money laundering scheme, Skyline Construction points to a series of cash deposits Cortes and third party associates acting at Cortes's direction made to SCOR's Bank of America account, most of which were for less than $10,000 (so as to avoid triggering a government notification), and which often were made on the same day in different cities or within a few minutes of one another. Id. ¶¶ 42-57. Skyline Construction further alleges Sandoval told SCOR employees other than Orozco and a vendor, Valley Vista Services, that Cortes was connected to Mexican drug cartels, which provided the source of some of his funds. Id. ¶¶ 57-59. Sandoval also is alleged to have spoken openly about his own Mexican gang affiliations, specifically his connection to the Mexican Mafia, and, according to the cross-complaint, the Mexican Mafia is affiliated with Mexican drug cartels. Id. ¶¶ 60-61.

    3.  Cortes's and Sandoval's Conspiracy to Interfere With SCOR's Business

According to the cross-complaint, Cortes, living unlawfully in the United States on an expired tourist visa in 2016, requested and was given the use of an office at SCOR—although at no time did Cortes have authorized involvement in SCOR's operations. Id. ¶¶ 65-66. Cortes is alleged to have spent his time in the office drinking beer, monitoring his Mexican auto dealership, and conspiring with Sandoval to steal SCOR's business. Id. ¶ 67.

Skyline Construction alleges that Sandoval tricked Orozco into believing that certain recycling vendors had purchase limits that prohibited them from purchasing all of SCOR's recyclable wood, and due to fire hazard regulations, SCOR would need to pay another company to remove the excess wood. Id. ¶¶ 71-75. Acting as Cortes's "front man," Sandoval conspired with Nutter and Apollo to remove for a fee the excess wood

and then immediately resell the wood to the customers Sandoval claimed had purchase limits, giving kickbacks to Cortes and Sandoval both from the amounts SCOR paid for the removal and the amounts the recycling vendor paid for the wood. Id. ¶¶ 76-80. Skyline Construction alleges two similar schemes involving secret reselling of SCOR's wood. Id. ¶¶ 81-82.

The cross-complaint also alleges Sandoval and Cortes operated various fraudulent "side routes" through which they diverted cash received from SCOR's recycling vendors to themselves. Id. ¶¶ 83-87. For example, Sandoval's assistant informed one of SCOR's recycling vendors that SCOR only would accept cash, following which SCOR received no further payments from that vendor; SCOR estimates this side route allowed Sandoval and others to pocket about $1,500 per day. Id. ¶ 86. Sandoval and Cortes also are alleged to have harmed SCOR's business by (1) driving away vendors who were concerned by the cash transactions; (2) refusing to implement financial best practices that would allow for more accurate tracking; and (3) soliciting SCOR employees to terminate their employment. Id. ¶¶ 88-91. On the basis of these interferences, Skyline Construction ordered Cortes to leave SCOR's premises.

### III. LEGAL STANDARDS

#### A. Rule 12(b)(6)

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (ellipsis in original; internal quotation marks omitted). But Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for failure to state a claim upon which relief can be granted. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson, 551 U.S. at 94. A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Id. (alteration in original;

**MEMORANDUM**

citation and internal quotation marks omitted). A complaint must "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

"If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*." Id.

### B. Rule 12(f)

A district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In considering a motion to strike, the court must view the pleading under attack in the light most favorable to the non-moving party. Robinson v. Managed Accounts Receivable Corp., 654 F.Supp.2d 1051, 1065 (C.D. Cal. 2009). Therefore, "motion[s] to strike should not be granted unless the court is convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim succeed." Id. (internal quotation marks omitted). "Motions to strike may be granted if it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Wilkerson v. Butler, 229 F.R.D. 166, 170 (E.D. Cal. 2005).

## IV. DISCUSSION

### A. PCB's Motion to Dismiss Cortes's FAC (Dkt. 17)

PCB seeks dismissal of the claims asserted against it, all related to a property located at 2321 S. Willow Avenue, Bloomington, CA 92316 (the Bloomington Property). The FAC's first claim for relief seeks to quiet title to the Bloomington Property; the thirty-eighth and thirty-ninth claims for relief seek imposition of a constructive trust, declaratory relief, and an injunction with respect to the California Properties, including the Bloomington Property. FAC ¶ 89-104; 662-78.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

According to the FAC, title to the Bloomington Property is currently in Orozco's name. Id. ¶ 93. Two deeds of trust, securing $675,000 and $475,500 in debt, respectively, list PCB as beneficiary.[1] Id. ¶¶ 94, 96. In addition, two assignments of rents, royalties, issues, and profits are signed by Orozco in favor of PCB, id. ¶¶ 95-96, and there also is a third-party lender agreement between PCB and So Cal CDC related to the Bloomington Property, id. ¶ 100.

"An action to quiet title requires a verified complaint that sets forth all of the following elements: (1) a legal description of the property and its street address or common designation; (2) the title of the plaintiff and the basis of the title; (3) the adverse claims to the title of the plaintiff; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the title of the plaintiff against the adverse claims." Kimball v. Flagstar Bank F.S.B., 881 F. Supp. 2d 1209, 1220 (S.D. Cal. 2012) (citing Cal. Civ. Proc. Code § 761.020). Title to real estate generally may be transferred only by an instrument in writing. Elias Real Estate, LLC v. Tseng, 156 Cal. App. 4th 425, 429-30 (2007) (citing Cal. Civ. Code § 1624). However, "[o]nce fraud by a fiduciary is shown by the evidence[,] a written contract for a real property transaction is not required." Warren v. Merrill, 143 Cal. App. 4th 96, 112 (2006).

PCB argues that Cortes fails to set forth the basis of his title to the Bloomington Property because Cortes did not identify an instrument in writing supporting his claim to title. Although the FAC references no written agreement between Cortes and Orozco/Soltero that Cortes or his companies own the California Properties, including the Bloomington Property, the FAC alleges Orozco and Soltero breached fiduciary duties and committed fraud when they failed to hold the properties' titles in Cortes or his companies as promised. FAC ¶¶ 616-50. PCB is correct, however, that although Warren may support Cortes's quiet title claims against alleged fiduciaries Orozco and Solero, the case does not save the claim against non-fiduciary PCB.

A quiet title action will not stand against a good faith encumbrancer. As the California Court of Appeal has explained:

> There is no contention that the bank had any knowledge of any fraud on the part of any of the individual defendants or of any facts as to the title of the

---

[1] The FAC alleges that the ProAmerica Bank, PCB's predecessor-in-interest, is listed in the deed of trust and related documents. For simplicity, PCB refers both to PCB and ProAmerica Bank.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

> property other than as disclosed by the official records in the county recorder's office. Therefore, the bank as a subsequent bona fide encumbrancer is entitled to have its trust deed lien protected.

Peterson v. Peterson, 74 Cal. App. 2d 312, 320 (1946) (citation omitted). The FAC includes no allegations that PCB had any reason to suspect that the documents evidencing title in Orozco's name to the Bloomington Property were improperly procured or fraudulent.[2] PCB's motion to dismiss Cortes's first claim for relief against PCB, as well as the derivative claims against PCB set forth in Cortes's thirty-eighth and thirty-ninth causes of action, is therefore GRANTED with leave to amend.[3]

**B. Cortes's and Sandoval's Motions to Dismiss and Motions to Strike Portions of Skyline Construction's Cross-complaint (Dkts. 24, 25)**

Cortes moves (1) to dismiss Skyline Construction's first, second, and third causes of action because they fail to meet Rule 9(b)'s heightened pleading standard applicable to the RICO and fraud claims; and (2) to strike as scandalous references to Cortes being connected to Mexican drug cartels or the Mexican mafia. Sandoval moves to dismiss Skyline Construction's third cause of action because it fails to meet Rule 9(b)'s heightened pleading standard and also to strike as scandalous references to Sandoval's affiliation with the Mexican Mafia.

    1. Motions to Dismiss RICO Claims (First and Second Causes of Action)

To state a claim for a RICO violation, Skyline Construction was required to plead that the defendant "participate[d] in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt." Eclectic Properties E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014) (citing 18 U.S.C. § 1962(c)). "In addition, the conduct must be (5) the proximate cause of harm to the victim." Id. (citing Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496-97 (1985). RICO claims are subject to Rule 9(b)'s heightened

---

[2] The Court grants PCB's unopposed request for judicial notice of seven documents from the San Bernardino County Recorder's Office related to the Bloomington Property (Dkt. 18). See Fed. R. Evid. 201(b).

[3] Cortes asserts that in addition to the first claim for relief, it meant to include PCB in the seventh claim for relief—this can be addressed in any amended complaint.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

pleading standard, requiring that the "circumstances constituting fraud . . . shall be stated with particularity." Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065-66 (9th Cir. 2004) (citation omitted).

The allegations related to Cortes's racketeering activity are limited to the following: (1) Sandoval told unnamed SCOR employees that Cortes was "connected to the Mexican drug cartels, which provided the source of some of his monies," Cross-compl. ¶ 57; (2) Sandoval told an unnamed Skyline vendor the same thing and that Cortes "had all the money he needed from those relationships," id. ¶¶ 58-59; (3) Sandoval said to an unnamed SCOR consultant that "he had connections to top members of the Mexican Mafia" and showed the consultant a photograph of Mexican Mafia leaders, id. ¶ 60; and (4) "the Mexican Mafia is known to be affiliated with and working alongside Mexican drug cartels . . . ." Id. ¶ 61.

These allegations do not pass muster under Twombley and Rule 9(b), but even if they did, Skyline Construction's alleged harm is insufficient. The cross-claim asserts Skyline Construction was harmed by the "loss of its banking relationship with Bank of America" and was "exposed to possible criminal investigation." Id. ¶¶ 62, 99, 104. But the cross-complaint neither alleges facts that would support Bank of America closing Orozco's personal accounts because of suspicious deposits into Skyline Construction's business account, nor explains why Bank of America would wait twenty months after the suspicious deposits to close the accounts and lines of credit. Skyline Construction's contention that it was exposed to a possible criminal investigation as a result of Cortes's alleged racketeering is not a causal injury for purposes of a RICO claim. See, e.g., Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1149 (9th Cir. 2008) (use or investment of racketeering income must give rise to an injury that is "separate and distinct from the injuries incurred from the predicate act itself."). Cortes's motion to dismiss Skyline Construction's first and second causes of action is therefore GRANTED with leave to amend.

    2.   Motions to Dismiss Fraudulent Misrepresentation (Third Cause of Action)

A claim for intentional misrepresentation under California law requires a showing of "(1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." Anderson v. Deloitte & Touche LLP, 56 Cal. App. 4th 1468, 1474 (1997) (quoting Molko v. Holy Spirit Ass'n., 46 Cal. 3d 1092,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

1108 (1988).  Rule 9(b) requires a party to state allegations of fraud "with a high degree of meticulousness."  Desaigoudar v. Meyercord, 223 F.3d 1020, 1022-23 (9th Cir. 2000).

Here, the cross-complaint alleges with sufficient specificity that Sandoval (1) falsely represented that SCOR needed to pay for removal of wood because recycling vendors had purchase limits and regulations required removal of the wood; (2) Sandoval and Cortes knew this to be untrue; (3) the representation was intended to defraud SCOR in order to pocket kickbacks from conspiring vendors; (4) SCOR justifiably relied on Sandoval's expertise; and (5) Skyline Construction was harmed by the loss of approximately $1,500 per day in revenues due to the unlawful kickback scheme.  Cross-compl. ¶¶ 68-81.

Cortes's and Sandoval's motions to dismiss Skylight Construction's third cause of action are DENIED.

    3.   Motions to Strike Scandalous Material

Cortes moves to strike as scandalous the cross-complaint's allegations that Cortes has ties to Mexican drug cartels; Sandoval moves to strike as immaterial and scandalous references to Sandoval's alleged ties to the Mexican Mafia.

Allegations may be stricken as scandalous if they "bear[] no possible relation to the controversy or may cause the objecting party prejudice."  Talbot v. Robert Matthews Distrib. Co., 961 F.2d 654, 664 (7th Cir. 1992) (citation omitted).  "A 'scandalous' matter improperly casts a derogatory light on someone, usually a party."  Wilkerson v. Butler, 229 F.R.D. 166, 170 (E.D. Cal. 2005) (citations omitted).  "Scandalous" matter includes statements that impugn the character of defendants, and that are superfluous descriptions rather than substantive elements.  See, e.g., Bureerong v. Uvawas, 922 F. Supp. 1450, 1479 (C.D. Cal. 1996) (striking the term "Slave Sweatshop" because it added nothing material to the allegations in the complaint and was highly prejudicial to the defendants).

Contrary to Skyline Construction's assertion, Sandoval's alleged statements are not party admissions by Cortes.  Nevertheless, construing the cross-complaint in Skyline Construction's favor, allegations of Cortes's and Sandoval's ties to Mexican drug cartels and mafia is not superfluous because it is directly related to the cross-complaint's RICO and money laundering claims.  Cf. Mireskandari v. Daily Mail & Gen. Tr. PLC, No. CV-1202943-MMM, 2013 WL 12129642, at *5 (C.D. Cal. July 31, 2013) (denying motion because "[t]he remaining allegations of purported criminal conduct defendants seek to

strike describe activity that is at the core of plaintiff's claims."). The motions to strike are therefore DENIED.

## V. CONCLUSION

PCB's motion to dismiss Cortes's FAC is GRANTED with leave to amend. Cortes's and Sandoval's motions to dismiss PCB's first and second causes of action in the cross-complaint are GRANTED with leave to amend. Cortes's and Sandoval's motions to dismiss Skyline Construction's third cause of action are DENIED, as are the motions to strike portions of the cross-complaint. Amended complaints consistent with this Order may be filed and served no later than November 23, 2017. Failure to file by that date will waive the right to do so. A redlined version of any amended complaint that clearly identifies all changes from the previously submitted complaint must be submitted to the chambers email and in paper form. The Court does not grant leave to add new defendants or new claims. Leave to add new defendants or new claims must be sought by a separate, properly noticed motion.

IT IS SO ORDERED.